**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INNOVATIVE SPORTS MANAGEMENT INC., d/b/a INTEGRATED SPORTS MEDIA,<br><br>Plaintiff,<br><br>- vs -<br><br>HUGO'S RESTAURANT INC. d/b/a HUGO'S RESTAURANT, CHRISTIAN HUGO, WILLIAM BENITEZ, JOSE HUGO,<br><br>Defendants. | CASE NO.: 2:26-cv-12916 |

**<u>COMPLAINT</u>**

Plaintiff, INNOVATIVE SPORTS MANAGEMENT INC. d/b/a INTEGRATED SPORTS MEDIA, by and through its attorney, as and for its Complaint against the Defendants, HUGO'S RESTAURANT INC. d/b/a HUGO'S RESTAURANT, CHRISTIAN HUGO, WILLIAM BENITEZ, and JOSE HUGO (collectively, "Defendants"), alleges as follows:

<u>JURISDICTION AND VENUE</u>

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) as this civil action is brought under the Communications Act of 1934, as amended, 47 U.S.C. § 553 (generally referred to as "Cable Piracy") and 47 U.S.C. § 605 (generally referred to as "Satellite Piracy").

2. Venue is proper in this District because a substantial part of the events giving rise to the claims occurred in this District and/or the Defendants reside in this District.

## THE PARTIES

3. Plaintiff, INNOVATIVE SPORTS MANAGEMENT INC. is a corporation organized and existing under the laws of New Jersey, conducts business as INTEGRATED SPORTS MEDIA, and maintains its principal place of business located at 64 North Summit St., Suite 218, Tenafly, NJ 07670. Plaintiff held the exclusive rights to permit commercial businesses such as the business made the basis of this suit to access the broadcast of the *Colombia vs. Uruguay (International Soccer Match)* telecast on October 12, 2023 including all pre-game, halftime, and post-game commentary (the "Program"). Commercial businesses such as the business made the basis of this suit were not authorized to receive and exhibit the Program in their commercial business without authorization from Plaintiff.

4. Upon information and belief, Defendant, HUGO'S RESTAURANT INC.

   a. is a New Jersey corporation,

   b. conducted business in the State of New Jersey on the date of the Program,

   c. conducted business as "HUGO'S RESTAURANT" on the date of the Program, and

   d. owned, operated, maintained, and controlled the commercial business known as HUGO'S RESTAURANT located at 1505-1507 Main Street, Rahway, NJ 07065 (the "Establishment") on the date of the Program.

5. Upon information and belief, Defendant, CHRISTIAN HUGO

   a. is an individual who resides in the State of New Jersey,

   b. operated, maintained, and controlled the Establishment on the date of the Program,

   c. was an owner of the entity owning and operating the Establishment on the date of the Program,

   d. was a member, manager, officer, and/or principal of the entity owning and operating the Establishment on the date of the Program,

e had a right and ability to supervise the activities of the Establishment on the date of the Program, and

f. had an obvious and direct financial interest in the activities of the Establishment on the date of the Program.

6. Upon information and belief, Defendant, WILLIAM BENITEZ

a. is an individual who resides in the State of New Jersey,

b. operated, maintained, and controlled the Establishment on the date of the Program,

c. was an owner of the entity owning and operating the Establishment on the date of the Program,

d. was a member, manager, officer, and/or principal of the entity owning and operating the Establishment on the date of the Program,

e had a right and ability to supervise the activities of the Establishment on the date of the Program, and

f. had an obvious and direct financial interest in the activities of the Establishment on the date of the Program.

7. Upon information and belief, Defendant, JOSE HUGO

a. is an individual who resides in the State of New Jersey,

b. operated, maintained, and controlled the Establishment on the date of the Program,

c. was an owner of the entity owning and operating the Establishment on the date of the Program,

d. was a member, manager, officer, and/or principal of the entity owning and operating the Establishment on the date of the Program,

e had a right and ability to supervise the activities of the Establishment on the date of the Program, and

f. had an obvious and direct financial interest in the activities of the Establishment on the date of the Program.

## FACTS

8. Plaintiff is in the sports media business providing access and distribution of sports programming to commercial businesses such as bars, pubs, clubs, restaurants, and the like (a "Commercial Business"). By written agreement with the owner of the right to televise the Program in a Commercial Business, Plaintiff was granted the exclusive right to permit a Commercial Business access to the broadcast of the Program. The broadcast of the Program was only available to the Establishment for public display through Plaintiff.

9. After receiving the proper commercial sublicense fee from a Commercial Business, Plaintiff would authorize the Commercial Business to receive and exhibit the Program publicly. The commercial sublicensing fee to receive and publicly exhibit the Program was based on the capacity of a Commercial Business. The transmission of the Program originated via satellite signal and was electronically coded or scrambled. The Program was not available to or intended for the free use of the general public on the scheduled date of the telecast of the Program. A Commercial Business could legally receive and publicly exhibit the Program after paying to Plaintiff a commercial sublicense fee and after Plaintiff's express authorization for a Commercial Business to receive and exhibit the Program.

10. The Program was legally available to Defendants for exhibition in the Establishment only after paying a commercial sublicense fee for the Program to Plaintiff. Defendants, however, chose not to contract with Plaintiff and pay the proper commercial sublicense fee to Plaintiff. Instead, Defendants, themselves and/or through their agents, servants, and/or employees, took affirmative steps to circumvent the commercial sublicensing requirement and unlawfully obtained the Program through an unauthorized cable signal, satellite signal, and/or internet stream.

11. Without authorization or payment to Plaintiff, Defendants wrongfully received and publicly exhibited the Program in their commercial business, the Establishment, on October 12, 2023. Plaintiff did not authorize the receipt and public exhibition of the Program in the Establishment.

12. Defendants willfully engaged in wrongful acts to intercept and/or receive the Program for free or at a nominal cost or assisted in such actions, while Plaintiff's legitimate commercial customers paid substantially more for the proper commercial sublicense. Then, Defendants publicly exhibited the Program in the Establishment to its paying patrons. Defendants knew, or should have known, the interception and/or receipt and exhibition of the Program at their Establishment was not properly authorized.

13. The Establishment is a commercial business that sold food and/or drink to its patrons. The Establishment is a Commercial Business whereby the Program could only be legally authorized for public exhibition by Plaintiff. Plaintiff did not and has not authorized the receipt and public display of the Program at the Establishment.

14. The broadcast of the Program at the Establishment was not a private viewing and was not for residential, non-commercial purposes. The broadcast of the Program at the Establishment was advertised on social media. The public display of the Program at the Establishment was to entice patrons to spend money at the Establishment while viewing the Program.

15. Defendants intentionally pirated or assisted in the intentional piracy of the Program for the purpose of their own economic gain. Defendants pirated or assisted in the piracy of the Program and exhibited the Program for the commercial purpose of attracting paying customers, patrons, and guests, thereby wrongfully benefiting financially by infringing upon Plaintiff's rights.

16. Defendants did not have license, authorization, permission, or consent from Plaintiff to exhibit the Program in the Establishment.

17. In addition, by virtue of their position(s) as it relates to the Establishment, Defendants CHRISTIAN HUGO, WILLIAM BENITEZ and JOSE HUGO had the right and ability to supervise and an obvious and direct financial interest in the activities of the Establishment at all relevant times.

18. At the time of the wrongful conduct described herein, Defendants' agents, servants, and employees were in fact Defendants' agents, servants, and employees and acting within the scope of their employment and authority as Defendants' agents, servants, and employees.

SATELLITE [47 U.S.C. § 605] AND CABLE [47 U.S.C. § 553] PIRACY

19. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation and averment set forth in the above paragraphs of this Complaint with the same force and effect as if the same were more fully set forth at length herein.

20. Defendants' exhibition of the Program was accomplished through the interception and/or receipt of a satellite signal or, in the alternative, through a cable signal.

21. Defendants' wrongful actions, in connection with the unauthorized exhibition of the Program, as described above, violate 47 U.S.C. § 605. By reason of Defendants' violation of 47 U.S.C. § 605, Plaintiff has standing and capacity to bring a private right of action.

22. Plead in the alternative, Defendants' wrongful actions, in connection with the unauthorized exhibition of the Program, as described above, violate 47 U.S.C. § 553, and by virtue of same, Plaintiff has standing and capacity to bring a private right of action.

23. Defendants' wrongful actions, in connection with the unauthorized exhibition of the Program, as described above, violate (in the alternative to the extent necessary) 47 U.S.C. §§ 605 or 553.

24. Accordingly, Plaintiff is entitled to judgment in its favor and against each Defendant for statutory damages, in the discretion of this Court, plus interest, costs, and attorney's fees pursuant to 47 U.S.C. § 605 or, alternatively, pursuant to 47 U.S.C. § 553.

## PRAYER

WHEREFORE, Plaintiff prays for judgment in favor of Plaintiff and against each Defendant as follows:

a. for statutory damages, in the discretion of this Court, of up to the maximum amount of $10,000.00 for the violation of 47 U.S.C. § 605 or, alternatively, for the violation of 47 U.S.C. § 553,

b. for additional statutory damages, in the discretion of this Court, of up to the maximum amount of $100,000.00 for the willful violation of 47 U.S.C. § 605 or, alternatively, for additional statutory damages, in the discretion of this Court, of up to the maximum amount of $50,000.00 for the willful violation of 47 U.S.C. § 553,

c. for Plaintiff's attorney's fees, interest, and costs of suit pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) or, alternatively, pursuant to 47 U.S.C. § 553(c)(2)(C), and

d. for such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

Dated: October 2, 2026 By: /s/ Ryan R. Janis

Ryan R. Janis, Esq.
JEKIELEK & JANIS
7 Neshaminy Interplex, Suite 209
Trevose, PA 19053
T: 215-337-4860
F: 267-386-2167
ryan@jj-lawyers.com

Attorneys for Plaintiff